UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MICHIGAN NURSES ASSOCIATION,

        Petitioner,

   v.                                 Case No. 18-C-1221

BAY AREA MEDICAL CENTER,

        Respondent.

---

## DECISION AND ORDER DENYING PETITION FOR PRELIMINARY INJUNCTION

---

Petitioner Michigan Nurses Association (MNA) filed this action against Respondent Bay Area Medical Center (BAMC) seeking an order pursuant to Federal Rule of Civil Procedure 65 to enjoin BAMC from transferring operations of the Heart & Vascular Clinic (H&V Clinic) to Aurora BayCare Medical Center (ABMC) and the status quo maintained during the pendency of arbitration. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims in arbitration arise under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, and the National Labor Relations Act, 29 U.S.C. § 151, *et seq.* This matter comes before the Court on MNA's petition for temporary restraining order and preliminary injunction in aid of arbitration. ECF No. 2. For the reasons stated below, the Court will deny MNA's petition.

## I. BACKGROUND

BAMC operates a hospital that provides services to patients in Marinette County, Wisconsin; Menominee County, Michigan; and the surrounding communities. MNA is the exclusive bargaining representative for "all full-time and regular part-time professional employees" of BAMC, including six registered nurses that work in the H&V Clinic. The current Collective Bargaining Agreement

(CBA) between MNA and BAMC covers the period from October 1, 2017, through Sepetember 30, 2019.

The CBA contains a grievance procedure which allows the parties to arbitrate disputes that arise under the contract. ECF 2-1. In addition, the CBA contains a Successor Clause, which states

> In the event that the Center Board of Directors sells, assigns proprietorship, or consolidates services of the Center, the current collective bargaining agreement shall continue in full force and effect. The sole purpose of this clause is to extend this Agreement for the full term and to make it binding to the assignee to the extent allowable by law.

*Id.*

On June 5, 2018, BAMC notified MNA members staffed in the H&V Clinic that it planned to close the clinic on August 16, 2018 and that ABMC will provide those clinic services at the clinic's new location beginning August 20, 2018 in accordance with an operating agreement with BAMC. BAMC informed MNA that the positions within the ABMC-operated H&V Clinic will not be recognized as a part of the MNA union and that the CBA will not be honored in regards to those employees.

On June 27, 2018, MNA notified BAMC that it would be filing a grievance and seeking arbitration in accordance with the CBA, based on its contention that BAMC failed to implement the CBA's Successor Clause. Around August 1, 2018, MNA contacted the Federal Mediation and Conciliation Service about arbitrating the grievance. The parties are currently in the process of selecting an arbitrator.

On August 8, 2018, MNA filed this action, petitioning the Court for a temporary restraining order and preliminary injunction preventing BAMC from closing the H&V Clinic and transferring

operation of the clinic to ABMC in aid of the ongoing arbitration. The Court subsequently conducted a telephone hearing on August 10, 2018. After considering oral arguments from both parties and Petitioner's pleadings and supporting affidavits, the Court declined to enter a Temporary Restraining Order and directed the parties to submit simultaneous briefs addressing Petitioner's request for a preliminary injunction. ECF Doc. 9.

## II. Analysis

"The Norris-LaGuardia Act cabins a district court's power to issue injunctive relief in cases 'involving or growing out of a labor dispute.'" *East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 703 (7th Cir. 2005) (quoting 29 U.S.C. § 101). The Supreme Court has created a narrow exception to the general prohibition of judicial interference with labor disputes, allowing judicial intervention when the involvement of the court is necessary to encourage and facilitate voluntary resolution of labor disputes through arbitration. *Boys Market, Inc. v. Retail Clerks Local 770*, 398 U.S. 235 (1970). "[T]he court must be satisfied that traditional requirements of equity—irreparable injury, a balance of hardships, and, to an appropriate degree, probability of success on the merits—support the award of injunctive relief." *Local Lodge No. 1266, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Panoramic Corp.*, 668 F.2d 276, 283 (7th Cir. 1981). The "routine issuance of injunctions against the sale of businesses could in many cases be extremely disruptive and costly. Hence we emphasize the need for searching analysis of the facts and law peculiarly applicable to each case" when this type of injunction is sought. *Id.* at 289.

## A. Likelihood of Success on the Merits

A party "seeking to maintain the status quo pending arbitration pursuant to the principles of *Boys Markets* need only establish that the position he will espouse in arbitration is sufficiently sound

to prevent the arbitration from being a futile endeavor." *Panoramic*, 668 F.2d 284–85. In making this determination, a court is to avoid interpreting the agreement as "[c]ontract interpretation is the function of the arbitrator not the courts." *Id.* at 285.

Arbitration of the Successor Clause of the CBA would not be a "futile endeavor," and BAMC has not claimed as such. The Court notes, however, that the CBA also contains a Management Clause that grants BAMC, among other things, the right to lay off employees, the right to carry out the ordinary and customary functions of management, and the right to change or eliminate operations or portions thereof. ECF No. 14-1.

**B. Irreparable Injury**

"Irreparable injury means not simply any injury resulting from a breach of contract that would not be fully redressed by an arbitral award, but rather 'injury so irreparable that a decision of the (arbitration) Board in the union('s) favor would be but an empty victory.'" *Panoramic* at 285–86 (quoting *Brotherhood of Locomotive Eng'rs v. Missouri-Kansas-Texas Railroad,* 363 U.S. 528, 534 (1960)). The "twin ideas of irreparable injury and frustration of arbitration" are treated as a single concept when assessing whether an injunction in aid of arbitration is appropriate. *Id.* at 286.

Petitioner argues that if BAMC is allowed to close the H&V Clinic and its operation is taken over by ABMC, the arbitrator would be unable to fashion a meaningful remedy. Relying on *Panoramic*, Petitioner asserts that a monetary award would not be an adequate remedy. As Respondent points out, however, the facts here are significantly different than those in *Panoramic*.

In *Panoramic*, the Court's decision was "driven in large part by the practical impossibility of fashioning a damage remedy" given the circumstances. *Bellon*, 414 F.3d at 705. The arbitrator in *Panoramic* would have needed to calculate the damages suffered by each of the 113 workers

4

employed by a complex organization for an unknowable length of time as the division being sold would have continued in existence under the original party's control, rendering it difficult to properly quantify monetary damages. *Id*. Here, there are only six employees who would be affected. In addition, while BAMC itself is not ceasing to exist as a viable entity, it is unlikely that the H&V Clinic could continue to operate under BAMC's control if enjoined because BAMC will no longer have any cardiologists on staff as of August 20, 2018. ECF No. 14, ¶ 8. Of the three cardiologists employed by BAMC in the Heart & Vascular Clinic, one previously departed the clinic and the other two have already negotiated termination agreements with BAMC and were subsequently hired by ABMC to provide cardiology services. *Id.* Without cardiologists, the H&V Clinic would likely close, and an arbitrator would no longer have to calculate monetary damages for an indefinite period of time. As a result, the circumstances here do not present the same practical impossibilities in regards to awarding damages as were present in *Panoramic*.

Petitioner, citing *Panoramic*, also argues that where "employer action threatens a permanent loss of jobs, a damage remedy is inadequate." 668 F.2d at 286. As noted in *Bellon*, however, "[a] permanent loss of employment, standing alone, does not equate to irreparable harm." 414 F.3d at 704. It is also unclear whether the job loss here would be considered permanent as contemplated in *Panoramic*. There, the purchasing entity "ha[d] no duty to rehire [the] employees and ha[d] expressed no specific desire to do so." *Panoramic*, 668 F.2d at 286. Here, all six H&V Clinic employees have accepted offers of employment with ABMC in addition to retaining their recall rights as provided for in the CBA. ECF No. 14, ¶ 14. As a result, consummation of the transaction between BAMC and ABMC will neither result in irreparable harm to Petitioner nor vitiate the arbitration process.

## C. Balance of Hardships and Public Interest

"The final equitable prerequisite to the issuance of a status quo injunction is a finding that the union will suffer more from the denial of an injunction than will the employer from its issuance." *Panoramic*, 668 F.2d at 288. MNA argues that the hardships it will endure, absent an injunction, are loss of employment and employment benefits for the six employees, as well as the lack of adequate remedy available through arbitration. BAMC would be subject to hardships similar to those claimed by the employer in *Panoramic*: losing out on the opportunity to sell the H&V Clinic and being forced to continue operating the clinic.

Here again, the facts are significantly different than those in *Panoramic*. The sale of the division in *Panoramic* was not motivated by any financial imperative or other necessity, but rather because the division was incompatible with the employer's other operations. *Id.* at 289. BAMC's motivation, in part, stems from the loss of its sole interventional cardiologist and administrator, which is what initially lead BAMC to seek out a third party to operate the H&V Clinic. In addition, BAMC would suffer more than just financial hardship if forced to continue operation of the clinic. It has already taken steps to notify patients, medical insurance providers, and managed care organizations of the impending change, all of which would have to be undone and could result in disruption to patient service. Because BAMC no longer employs its own cardiologists, BAMC would also endure hardship trying to comply with pertinent regulatory requirements. *See* MEDICARE CLAIMS PROCESSING MANUAL, Pub. 100-04, Chapter 32, Section 140.

MNA's hardships, on the other hand, are not as severe given this Court's finding that MNA is still able to obtain an adequate remedy through arbitration. Finally, MNA's hardships are, in part, self-inflicted, given the fact that it waited until August 23, just one week before the clinic would

6

transfer its operation from BAMC to ABMC, to file this action despite knowing about the transfer since June 5—more than two months earlier.

"Another factor considered in conjunction with a preliminary injunction is the public interest, 'which is the effect that granting or denying the injunction will have on nonparties.'" *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO-CLC, & Local 9550 v. Cequent Towing Prods.*, 920 F. Supp. 2d 932, 942 (N.D. Ind. 2013) (quoting *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1121 (7th Cir. 1997). Granting an injunction here would be detrimental to the public because it could adversely impact the ability of people in Marinette County and the Upper Penninsula to access important medical services in the short term. MNA argues that granting the injunction would not negatively impact the public because under the terms of an agreement already in effect, ABMC is already obligated to provide cardiologist services to BAMC. ECF No.14-2. In order to grant a preliminary injunction, the Court must determine that the injunction sought will not harm the public interest. *Platinum Home Mortg. v. Platinum Fin. Group*, 149 F.3d 722, 726 (7th Cir. 1998). The Court is unable to make that determination here. While it is possible that, as MNA claims, a preliminary injunction may not harm the public interest, the Court is unable to make that determination given the minimal record and lack of additional supporting evidence. As a result, balancing all of the considerations, the Court finds that the hardships claimed by MNA do not outweigh the hardships claimed by BAMC.

### III. CONCLUSION

Based on the record before the Court, MNA has failed to establish that it will suffer irreparable harm or that the balance of hardships weigh in its favor.

**IT IS THEREFORE ORDERED** that MNA's petition for a preliminary injunction in aid of arbitration is **DENIED**.  Since that is the only relief sought by MNA, the action is dismissed and the clerk is directed to enter judgment accordingly.

Dated this  15th  day of August, 2018.

s/ William C.  Griesbach
William C. Griesbach, Chief Judge
United States District Court